**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RYAN CHRISTOPHER CHEATHAM,**

**Plaintiff,**

**v.** **CASE NO. 22-3132-JWL-JPO**

**ANDREW DEDEKE, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Ryan Christopher Cheatham is hereby required to show good cause, in writing to the undersigned, why his claims regarding his dental care, his medical care for his injured finger, and his claims regarding his STD test, should not be dismissed for failure to state a claim. Plaintiff must also show good cause why his claims against Sheriff Dedeke should not be dismissed. Plaintiff's claims regarding his mental healthcare and medications survive screening.

## I. Nature of the Matter before the Court

Plaintiff filed this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is in custody at the Leavenworth County Jail in Leavenworth, Kansas ("LCJ"). On July 12, 2022, the Court entered an Order (Doc. 5) dismissing Plaintiff's claim regarding the processing of his mail and ordering a *Martinez* Report regarding Plaintiff's medical care. The Report has been filed (Doc. 6) and Plaintiff has filed a response (Docs. 10, 19).

Plaintiff alleges in his Complaint that Nurse Melissa Wardrop denied him mental health treatment and medications at the LCJ from 2019 to 2022. (Doc. 1, at 2.) Plaintiff alleges that he was denied medication because he failed a urine test in court. *Id*. Plaintiff alleges that Nurse Wardrop requested a second "ROI" even though had previously provided one. *Id*. at 6.

Plaintiff claims that when he returned to the LCJ again in May 2022, he was denied medication by Nurse Wardrop because he failed his UA test. *Id*. at 7.

Plaintiff also alleges that Nurse Wardrop refused to treat his finger that was injured during his arrest, but acknowledges that she ordered an x-ray of his finger "because Sargent Patterson ordered her to." *Id*. Plaintiff claims that Nurse Wardrop told him the x-ray showed no broken bones, but when Plaintiff requested an MRI he did not receive a response. *Id*.

Plaintiff also claims that he requested to be seen regarding an STD test on June 13, 2022, but his request to be seen was ignored. *Id*. at 7. Plaintiff claims that he was denied antibiotics or ibuprofen for tooth pain due to a lockdown. *Id*. at 9.

Plaintiff names Sheriff Andrew Dedeke and Nurse Melissa Wardrop as defendants and seeks seven million dollars in damages.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### A. Deliberate Indifference to Medical Needs

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

A plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

Plaintiff's claims regarding the care for his injured finger, his dental care, and his requests to be seen regarding his STD test results, fail to state a claim for relief. Plaintiff should show good cause why these claims should not be dismissed.

1. Claims regarding dental care

The *Martinez* Report (Doc. 6) ("Report") provides that:

> On June 23, 2022, Mr. Cheatham submitted a sick call request via the Kiosk complaining of tooth and face pain. Medical placed Mr. Cheatham on the dental call out list. *Wardrop* ***Ex. A;*** *Inmate requests/responses* ***Ex. T.***
>
> On July 14, 2022, Mr. Cheatham was seen by the LVSO jail dentist. The dentist prescribed an antibiotic for possible infection and ibuprofen for pain. ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M***.
>
> * * * *
>
> On September 8, 2022, Mr. Cheatham was seen by Dr. Busettii the jail dentist for continued complaints of tooth pain. The dentist prescribed antibiotics, over the counter pain medication

> (ibuprofen) and an oral rinse. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***

(Doc. 6, at 11, 13) (internal paragraphs omitted).

Plaintiff has provided his medical request form regarding his tooth. (Doc. 19–17, at 2.) The request is dated June 23, 2022. *Id*. Plaintiff initiated this action six days later, on June 29, 2022. The request states that due to the lockdown, staff requested that Plaintiff be seen via email regarding his tooth "having a hole in it." *Id*. Plaintiff notes that he has had the issue for a "few days," is in a lot of pain, and should not have to wait to receive antibiotics. *Id*. Plaintiff claims that he was not prescribed an antibiotic and ibuprofen until July 14, 2022. (Doc. 24–1, at 3.)

Plaintiff has not shown that the 21-day delay in receiving antibiotics and ibuprofen constitutes cruel and unusual punishment. Plaintiff was placed on the dental call out list after he made his request. Plaintiff has not shown that either of the named Defendants was deliberately indifferent regarding his dental care. Plaintiff should show good cause why this claim should not be dismissed for failure to state a claim.

2. Claims regarding Plaintiff's injured finger

The Report provides that when Plaintiff was booked into the LCJ on May 18, 2022, a medical screening was done at intake, and Plaintiff disclosed that he had injured his right little finger. (Doc. 6, at 9.) The jail nurse was called out to the report room upon intake to cut off the gauze from his right hand for evidence at the request of the Leavenworth Police Department. *Id*. The Report provides that:

> Mr. Cheatham filed a grievance saying that [h]is finger hurt on May 23, 2022. He was advised on May 24, 2022 that he needed to submit a sick call to be seen by medical for his finger. *Wardrop* ***Ex. A,*** *Inmate sick call requests/responses* ***Ex. T.***
>
> On May 30, 2022, Mr. Cheatham submitted a sick call via the Kiosk complaining that his finger hurt and that he could not bend

his finger. *Wardrop* ***Ex. A,*** *Inmate sick call requests/responses* ***Ex. T.***

On May 31, 2022 [Mr. Cheatham] was seen by medical staff. Mr. Cheatham stated that the injury occurred during his arrest. He admitted during the sick call that LVPD offered to take him to Providence Hospital but he refused because he did not want to go there. He was evaluated by medical staff during the sick call and an x-ray was ordered with negative results. One of the medical providers, Jana Harris, Nurse Practitioner, reviewed the sick call and x-ray and other than ordering ibuprofen for pain, determined that no further treatment was needed at the time. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***

* * * *

On August 9, 2022, medical and mental health staff met and discussed Mr. Cheatham. On that same day, Judith Beck, Nurse Practitioner (also the Jail Medical Director) examined Mr. Cheatham regarding his right hand pinky complaint and request for mental health meds. The Jail Medical director reviewed Mr. Cheatham's medical file as well as the x-ray and concurred at the time that there were no further treatment orders for his hand at that time. She also ordered that Mr. Cheatham start taking 10 mg of Abilify daily for mental health needs. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***

On August 11, 2022, Mr. Cheatham put in another sick call about his right hand. He was called down to medical and it was explained to him that there were no further orders from medical at that time. *Wardrop* ***Ex. A;*** *Inmate requests/responses* ***Ex. T***; *Inmate Medical File 2021-2022* ***Ex. M.***

* * * *

Also on August 30, 2022, Mr. Cheatham was seen by Judith Beck, N.P. (the jail medical director) for his continued finger complaint. Beck ordered Mr. Cheatham to do hand exercises with a street [sic] ball twice daily. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***

On September 6, 2022, Mr. Cheatham met with Jana Harris, Nurse Practitioner for his continual complaint of his right hand/finger. Harris, N.P., ordered a MRI through Diagnostic Imaging in Kansas City, Kansas. Medical staff is working on scheduling that

> appointment. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***
>
> Mr. Cheatham came down to complete his hand exercises on September 7, 2022, and the jail nurse noticed he was showing signs and symptoms of COVID. He was rapid tested and tested positive. He is currently being treated with Tylenol twice daily and has been quarantined for five days per CDC guidelines. *Wardrop* ***Ex. A;*** *Inmate Medical File 2021-2022* ***Ex. M.***

*Id*. at 10–12 (internal paragraphs omitted).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment or medication. Plaintiff received an x-ray for his finger, but did not receive an MRI until after he filed this case. Part of the delay was due to him being quarantined after testing positive for Covid. This apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

3. Plaintiff's claims regarding his STD test

The Report provides that Plaintiff submitted a sick call for a testicular check on November 3, 2021, complaining of testicular pain and swelling. (Doc. 6, at 8.) Plaintiff was seen by P.A. Pruessner the next day, and she ordered a UA and requested an STD test. *Id*. She

ordered ibuprofen for treatment of pain and requested that the urine sample be sent to the Leavenworth County Health Department for STD testing. *Id*. The LCJ medical department received the results of the STD test on November 16, 2021, and the results were negative. *Id*. This information was shared with Plaintiff. *Id*.

Plaintiff's response shows that he was upset about not being able to see the actual results and was merely told it was negative. (Doc. 19–18, at 2.) Plaintiff has failed to show that any defendant was deliberately indifferent regarding his STD test.

3. Mental Healthcare and Medication

Plaintiff denies various statements in the Report, and claims that he did not sign any "inmate classification screenings" except the one dated March 29, 2020. (Doc. 10, at 1.) Plaintiff also claims that his refusal to answer questions at booking was due to him not being in the right state of mind because he "was on drugs." *Id*. at 1, 2. Plaintiff alleges that he has never denied any diagnoses or mental health medications. *Id*. at 1. Plaintiff also alleges that he did not refuse to meet with mental health staff because "no staff existed at the jail." *Id*. at 2. Plaintiff claims that although jail policy is to wait 30 days after a failed UA, it took 90 days to receive his mental health medications. *Id*. at 3. He claims he did not receive mental health medications until after the *Martinez* Report was ordered in this case. *Id*.

Plaintiff disputes the allegations in the *Martinez* Report regarding his mental healthcare and medications. Plaintiff maintains his version of the events and his allegations set forth in his Complaint. The *Martinez* Report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Therefore, his claims regarding his mental healthcare and medications survive screening and the Court will order an answer after addressing any

response by Plaintiff to this order to show cause why his remaining claims should not be dismissed.

**B. Personal Participation**

Plaintiff names Sheriff Dedeke as a defendant, but has failed to allege how the Sheriff personally participated in the deprivation of his constitutional rights. Plaintiff appears to rely on the supervisory status of the Sheriff. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983

liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

The Report provides that "Sherriff Dedeke was not involved in the decisions made by Ms. Wardrop and the Leavenworth County Jail Medical Staff." (Doc. 6, at 14.) Plaintiff should show good cause why his claims against Sheriff Dedeke should not be dismissed.

## IV. Pending Motions

Plaintiff has filed multiple motions in this case. The Court will address each of Plaintiff's pending motions.

A. Motions for Default Judgment (Docs. 12, 25)

Plaintiff seeks the entry of a default judgment, arguing that Defendants have not properly answered. However, this Court's Order (Doc. 5) directing officials responsible for the operation of the LCJ to prepare a *Martinez* Report, provides that after the filing of the Report and Plaintiff's response to the Report, "[t]he court will then screen the complaint and determine whether service is warranted in this action." (Doc. 5, at 3–4.) The Defendants in this case have

not been served and therefore were not required to file an answer. Plaintiff's motions for default judgment are denied.

B. Motions Relating to the Appointment of Counsel

Plaintiff has filed a Motion for Clarification (Doc. 13), asking the Court to review the contents of his competency evaluation report and to reconsider the appointment of counsel in light of the report. Plaintiff has also filed a Motion to Enter Exhibit D as Evidence (Doc. 18), seeking to enter his competency report into the record. The Court will grant the motion to the extent that Plaintiff seeks to enter Exhibit D—his Evaluation of Competency to Stand Trial—into the record. Plaintiff has also filed a motion to appoint counsel, asking this Court to reconsider its prior decision denying appointment of counsel (Doc. 15), and a "Motion for Final Judgment to Appoint Counsel" (Doc. 20), asking the Court to consider the complexity of the legal issues and his competency report.

The Court denies Plaintiff's request to reconsider the prior denial of appointment of counsel, and denies all of Plaintiff's current requests for the appointment of counsel. The Court has previously denied two motions for the appointment of counsel and one motion to reconsider the denial of his motion to appoint counsel. *See* Docs. 3, 5, 7, 8, and 9. The Court considered Plaintiff's argument that he was found incompetent to stand trial, and found that "plaintiff is able to understand the [*Martinez*] report, is familiar with the facts, and can express himself clearly." (Doc. 9, at 2.)

Nothing in Plaintiff's Evaluation of Competency to Stand Trial at Exhibit D warrants the appointment of counsel at this time. The June 23, 2022 evaluation provides in pertinent part that:

> Administration of the MacArthur Competence Assessment Tool – Criminal Adjudication (MacCAT-CA) revealed **minimal to no impairment** in Mr. Cheatham['s] ability to understand the legal system. He was to demonstrate basic knowledge about the legal

> system during this assessment and was able to orient himself to new information about the legal system. Importantly, this demonstrates that Mr. Cheatham can learn new information and apply this information to a broader context. This indicates that Mr. Cheatham would be able to understand the legal system proceedings but due to issues with appreciation of his own legal situations (see below) he would benefit with significant guidance from his legal counsel and psychiatric medications.
>
> Mr. Cheatham demonstrated **minimal to no impairment** in reasoning about the legal situation presented in the case vignette and in his own situation. Mr. Cheatham was able to understand the difference between different charges and he was able to identify the consequences of his current charges and charges presented in case vignettes.
>
> In the appreciation section, Mr. Cheatham demonstrated **mild impairment** in his ability to appreciate his own legal situation and the possible choices. Due to the fact that Mr. Cheatham is currently unmedicated, it is unlikely that he will be able to appropriately testify for himself in court until he has been treated for underlying psychiatric conditions.

(Doc. 18–1, at 2.) Plaintiff acknowledges that he is now receiving medication.

C. Motion for Leave to Appeal In Forma Pauperis (Doc. 22)

Plaintiff also filed a notice of appeal regarding the denial of appointment of counsel. (Doc. 14.) On October 11, 2022, the United States Court of Appeals for the Tenth Circuit dismissed the interlocutory appeal for lack of jurisdiction. (Doc. 23.) In light of the Tenth Circuit's dismissal, the Court denies Plaintiff's motion for leave to appeal in forma pauperis (Doc. 22) as moot.

D. Motion for Production of MRI Report (Doc. 24)

Plaintiff alleges that on October 14, 2022, he received an MRI on his right finger at the Atchison Medical Facility. (Doc. 24, at 1.) Plaintiff seeks oral arguments to allow the doctor who conducted the MRI to be cross-examined regarding the results or to obtain a written report

as to the MRI and the injury and damages caused by the delay. *Id.* at 2–3. Plaintiff's motion is seeking discovery which is premature at this stage of the proceedings. The motion is denied.

**V. Response Required**

Plaintiff is required to show good cause why his claims regarding his dental care, medical care for his injured finger, and claims regarding his STD test, should not be dismissed for the reasons stated herein. Plaintiff should also show good cause why his claims against Sheriff Dedeke should not be dismissed. Failure to respond by the deadline may result in the dismissal of these claims without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **December 19, 2022,** in which to show good cause, in writing, to the Honorable John W. Lungstrum, United States District Judge, why Plaintiff's claims regarding his dental care, medical care for his injured finger, and claims regarding his STD test, should not be dismissed for the reasons stated herein. Plaintiff should also show good cause why his claims against Sheriff Dedeke should not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Default Judgment (Docs. 12, 25) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Enter Exhibit D as Evidence (Doc. 18) is **granted** to the extent that Plaintiff seeks to enter Exhibit D into the record.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to appeal in forma pauperis (Doc. 22) is **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Clarification (Doc. 13) and motions seeking the appointment of counsel (Docs. 15 and 20) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Production of MRI Report (Doc. 24) is **denied.**

**IT IS FURTHER ORDERED** that the Clerk is directed to redact Plaintiff's date of birth and social security number on Doc. 19–13, at p. 1.

**IT IS SO ORDERED**.

**Dated November 21, 2022, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**